IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| QUENTIN PENNINGTON, ET AL., | : | CIVIL ACTION |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| NOBLE R. KING, ET AL., | : | |
| Defendants. | : | NO. 07-4016 |

## MEMORANDUM AND ORDER

GENE E.K. PRATTER, J.                                                   FEBRUARY 19, 2009

Roadway accidents too often end in loss of life and limb, leaving litigation as a poor substitute to deal with the results of a tragedy. This is such a case. Here, the accident occurred between the driver of a Sport Utility Vehicle ("SUV") and the driver of a tractor-trailer, resulting in the death of the SUV driver and personal injuries to her front-seat passenger. Plaintiffs,[1] including the Estate of Ms. Kathy Walton, the deceased SUV driver, and her passenger, Mr. Quentin Pennington, sued the driver of the tractor-trailer, Mr. Noble R. King, and his business CH&T Express. Plaintiffs are advancing claims for wrongful death, personal injuries, and loss of vehicle. After the close of discovery, Defendants filed a Motion for Partial Summary Judgment as to the claim for punitive damages, and also requested that the Court exclude all evidence of, and references to, Mr. King's alleged use of marijuana some 36 hours prior to the accident and what Plaintiffs contend was his alleged resulting impairment. Plaintiffs oppose the motion.

---

[1]  At the time the Complaint was filed, Plaintiffs included Mr. Quentin Pennington; Ms. Lynn Wilgis, individually and as Administratrix of the Estate of Kathy M. Walton; Ms. Paradise Furlong, a minor by Mr. Marvin T. Furlong, Jr., her parent and natural guardian; and Mr. Christopher Furlong, a minor by Mr. Marvin T. Furlong, Jr., his parent and natural guardian. Subsequently, Mr. Alan Jarvis was substituted as Ms. Walton's Administrator.

For the reasons discussed below, the Court grants the Motion as to the exclusion of all evidence of, and references to, Mr. King's use of marijuana and his supposed resulting impairment, but denies the Motion as to the claims for punitive damages.

I.      FACTUAL AND PROCEDURAL HISTORY

A.      Overview of Punitive Damages Claim

Plaintiffs allege that decedent, Ms. Kathy Walton, was killed when the SUV she was driving collided with the tractor-trailer that Mr. King was driving.  Compl. at ¶¶ 6, 8.  The front seat passenger of Ms. Walton's SUV, Mr. Quentin Pennington, was injured, causing him "to endure considerable pain and suffering and to lose earnings and future earning capacity."  Compl. at ¶ 14; see also id. at ¶¶ 7-8.  In addition, Ms. Walton's SUV was "so damaged as to be worthless other than for salvage."  Compl. at ¶ 16.

Plaintiffs allege that on the morning of the accident, Mr. King "was operating his tractor trailer while under the influence of marijuana in violation of the Pennsylvania Motor Vehicle Code[,] which violation constitutes reckless, gross negligence and wantonness for which Plaintiffs seek exemplary damages."  Compl. at ¶ 15.  At oral argument, Plaintiffs' counsel explained further that their punitive damages claim was based on the alleged erratic and reckless driving of Mr. King, presumably without necessarily implicating the specific reference to marijuana.  Oral Argument Tr. at 16.  Defense counsel did not contend that the punitive damages claim is dependent exclusively on the marijuana predicate.  (Indeed, defense counsel concentrates more on the defense contention that the decedent herself was negligent, an issue left for another day.  Oral Argument Tr. at 28-29.)

B.      The Collision

Prior to the accident, Ms. Walton's SUV and Mr. King's tractor-trailer were traveling on

State Route 283 in proximity to each other for approximately ten minutes.  Deposition of Quentin Pennington ("Pennington Dep."), Plfs.' Ex. A, at 95, 100.  Mr. King was talking to his wife on a cellular phone.  Deposition of Noble King ('King Dep."), Defs.' Ex. B at 22-23, 25; Deposition of Sergeant Jeffrey G. Mullin ("Mullin Dep."), Defs.' Ex. E, at 37.

There was time and opportunity for Mr. Pennington to observe the driving of Mr. King during this time.  Pennington Dep., Plfs.' Ex. A, at 97-125.  Mr. Pennington testified that when Ms. Walton's SUV first encountered the tractor-trailer, the tractor-trailer was 25 feet behind Ms. Walton's SUV in the left-hand lane.  Id. at 98.  According to Mr. Pennington, the tractor-trailer "[m]ade [an] attempt to overtake [Ms. Walton's SUV], but it seemed like [Mr. King] didn't fully – like he wanted – like he wanted to keep going past, but then he dropped, let off the gas."  Id.  Mr. Pennington described some back and forth movement that occurred between the two vehicles in the minutes before the accident, noting that the tractor-trailer did not pass Ms. Walton or get into the right lane at any time prior to the accident.  Id. at 96-107.  Mr. Pennington also said that, in the final moments before the accident, "there was a little back and forth [between the two vehicles], but it wasn't – wasn't so much that it was very noticeable."  Id. at 117.

Plaintiffs' accident reconstruction expert, Mr. James E. Baranowski, opined that as Ms. Walton's SUV and Mr. King's tractor-trailer were traveling west, Mr. King "was traveling beside the Walton vehicle for several miles, not allowing [Ms. Walton] to pass him."  Report of James E. Baranowski ("Baranowski Rept."), Plfs.' Ex. B, at 3.  Mr. Baranowski reconstructed the moments before the accident:

> In an attempt to pass the King vehicle, Walton speed [sic] up her vehicle to approximately 75 MPH.  As she pulled ahead of the King vehicle, she attempted to move into the left lane.  King accelerated his vehicle to between 76 and 85 MPH. The right front of the King vehicle struck the left rear of the Walton vehicle, causing

3

it to rotate perpendicular to the King vehicle and be pushed down the roadway.

Id.

      C.      Toxicology Screen Results

      A toxicology screening performed on Mr. King following the accident revealed the presence of marijuana in his blood, and Mr. King admitted to smoking marijuana on the Saturday evening two days prior to the accident.  Report of Edward J. Barbieri, Ph.D., NMS ("Barbieri Rept."), Plfs.' Ex. C, at 1; King Dep., Defs.' Ex. B, at 45-46.

      D.      Toxicology Report

      The toxicology report prepared by Plaintiffs' expert, Dr. Edward Barbieri, Ph.D., Forensic Toxicologist, states:

> Based on the concentration of Delta-9 THC found in this case, it can be stated with reasonable scientific certainty that **if** the individual showed signs of impairment (e.g. evidence of erratic driving, unusual demeanor, etc.), then this substance **can be** responsible for the production of that impairment, ***especially in the absence of another more competent cause.***  Such impairment would be characterized by diminished faculties associated with the safe operation of a motor vehicle, including impaired alertness, judgment, perception, coordination, response time, and sense of care and caution.  These decrements **can cause** the individual to be impaired to and beyond the point of rendering this individual unfit to operate a motor vehicle safely.

Barbieri Rept., Plfs.' Ex. C, at 1 (emphasis added).

      E.      Mr. King's Interactions with Law Enforcement Officials and Eye Witness After the Accident

      Following the accident, Mr. King spoke with three law enforcement officials and one eye witness to the accident, all of whom testified that immediately following the accident, Mr. King exhibited no signs of intoxication or impairment.

      1.      Officer David Bender

Officer David M. Bender, an East Hempfield Township police officer, was responsible for investigating the accident. Deposition of Officer David M. Bender ("Bender Dep."), Def.'s Ex. C, at 17-18. As a police officer, he is trained to determine, when interviewing participants in an accident, if they are under the influence of any controlled substance or illegal substance at the time. Id. at 39-41. After interviewing Mr. King at the scene of the accident, Officer Bender determined that Mr. King did not appear to him to be under the influence of any controlled or illegal substance. Id.

      2.      Detective Sergeant Brian K. Nice, Sr.

Detective Sergeant Brian K. Nice, Sr., also employed by the East Hempfield Township, investigated the accident and interviewed Mr. King at the scene. Deposition of Detective Sergeant Brian K. Nice, Sr. ("Nice Dep."), Defs.' Ex. D, at 7, 11. Detective Sergeant Nice testified that, from his experience in performing traffic stops, he was trained to determine whether a person was displaying signs of impairment. Id. at 11-13. He testified that he did not observe any signs that Mr. King was impaired when he interviewed Mr. King at the scene of the accident. Id. at 13.

      3.      Sergeant Jeffrey G. Mullin

Sergeant Jeffrey G. Mullin is employed by the West Hempfield Township Police Department. Mullin Dep., Defs.' Ex. E, at 4.[2] He is a certified accident reconstructionist, and was called to the scene to perform an accident reconstruction. Id. at 4-5, 9-10. In preparing his report, Sergeant Mullin interviewed Mr. King at the scene; he stated that he did not see any signs that led him to believe that Mr. King was impaired in any way. Id. at 36-37. Sergeant Mullin did testify that

---

[2] East Hempfield and West Hempfield collaborate whenever there is a crash involving fatalities through a Crash Scene Investigative Unit. Mullin Dep., Defs' Ex. E, at 7.

Mr. King's "full attention was not on his driving" at the time of the accident, as Mr. King was talking to his wife on a cellular telephone at the time of the collision.  Id. at 37.  However, Sergeant Mullin did not think that Mr. King's "distraction," in terms of Mr. King's being on a cellular telephone, caused the accident.  Id. at 37-38.

4.      Laura W. Miller

Ms. Laura W. Miller witnessed the accident.  Deposition of Laura W. Miller ("Miller Dep."), Defs.' Ex. F, at 7-10.  As a social worker, Ms. Miller has experience with people under the influence of controlled substances.  Id. at 27.  Ms. Miller spoke to Mr. King at the scene of the accident and she did not consider him to be under the influence of any substance.  Id. at 27-28.

II.      STANDARD OF REVIEW

Upon motion of a party, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Summary judgment may be granted only if the moving party persuades the district court that "there exists no genuine issue of material fact that would permit a reasonable jury to find for the nonmoving party."  Miller v. Ind. Hosp., 843 F.2d 139, 143 (3d Cir. 1988).  An issue is "genuine" if a reasonable jury could possibly hold in the non-movant's favor with regard to that issue.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" only if it could affect the result of the suit under governing law.  Id.

Evaluating a summary judgment motion, the court "must view the facts in the light most favorable to the non-moving party," and make every reasonable inference in that party's favor. Hugh v. Butler County Family YMCA, 418 F.3d 265, 267 (3d Cir. 2005).  If, after making all

reasonable inferences in favor of the non-moving party, the court determines that there is no genuine issue of material fact, summary judgment is appropriate.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Wisniewski v. Johns-Manville Corp., 812 F.2d 81, 83 (3d Cir. 1987).

The party opposing summary judgment must support each essential element of that party's opposition with concrete evidence in the record.  Celotex, 477 U.S. at 322-23.  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  Anderson, 477 U.S. at 249-50 (citations omitted).  This requirement upholds the "underlying purpose of summary judgment [which] is to avoid a pointless trial in cases where it is unnecessary and would only cause delay and expense."  Walden v. Saint Gobain Corp., 323 F. Supp. 2d 637, 641 (E.D. Pa. 2004) (citing Goodman v. Mead Johnson & Co., 534 F.2d 566, 573 (3d Cir. 1976)).

III.    DISCUSSION

Punitive damages based on state law claims are governed by state law.  Griffiths v. Cigna Corp., 857 F. Supp. 399, 409-10 (E.D. Pa. 1994), aff'd, 60 F.3d 814 (3d Cir. 1995).  Pennsylvania law provides that punitive damages are proper when the offending actions are of such an outrageous nature that they demonstrate intentional or willful, wanton or reckless conduct.  SHV v. Cole, Inc. v. Continental Grain Co., 587 A.2d 702, 704 (Pa. 1991) (internal citations omitted).

Plaintiffs' claims here for punitive damages are based primarily on the allegation that Mr. King was under the influence of marijuana at the time of the accident, and also on the claim that he was driving erratically and recklessly.  Under Pennsylvania law, the issue of the admissibility of evidence of marijuana use is treated similarly to the issue of the admissibility of alcohol consumption.  Hawthorne v. Dravo Corp., 508 A.2d 298, 303, 304 (Pa. Super. 1986) (stating that "the same reasons for excluding alcohol consumption where intoxication is not proved apply with

equal, if not added, force to situations involving the use of marijuana," and excluding evidence of marijuana use by driver decedent where decedent had used marijuana more than four hours prior to the accident, and the toxicology expert opined that the effect of the use of marijuana would continue for only three or four hours).

Intent or motive need not be shown before punitive damages are awarded, and "driving while under the influence of intoxicating liquor[,] with its very great potential for harm and serious injury[,] may under certain circumstances be deemed 'outrageous conduct' and 'a reckless indifference to the interests of others' sufficient to allow the imposition of punitive damages." Focht v. Rabada, 268 A.2d 157, 160 (Pa. Super. 1970).  However, "while proof of intoxication is relevant where reckless or careless driving of an automobile is the matter at issue, the mere fact of drinking intoxicating liquor is not admissible unless it reasonably establishes a degree of intoxication which proves unfitness to drive."  Rovegno v. Geppert Bros., 677 F.2d 327, 328-31 (3d Cir. 1982) (internal citations omitted) (applying Pennsylvania law, affirming the district court's exclusion of evidence regarding driver decedent's blood alcohol level because it was not accompanied by "other" evidence such as "excessive speed, recklessness or erratic driving"; however, there was evidence that driver was "careless" in his driving and changed lanes at the wrong time, sufficient to support the jury's finding that driver was negligent).  Thus, for evidence of elevated blood alcohol to be admissible, it must be supplemented by other evidence of intoxicated behavior. Id. at 330.  Although Pennsylvania law governs the admissibility of evidence of intoxication, Pennsylvania courts implicitly require the same discretionary weighing of probative value and prejudicial effect as required by Federal Rule of Evidence 403. Id. at 329.  With respect to this "discretionary weighing," the Third Circuit Court of Appeals has emphasized the "substantial

presumption of correctness" given to a trial court's ruling on the admissibility of evidence of alcohol consumption.  Id. at 330. [3]

Pennsylvania courts have excluded evidence of alcohol consumption where the evidence of a driver's alcohol consumption was not sufficient to support a finding that he or she was intoxicated. For instance, in Locke v. Claypool, 627 A.2d at 802-04, the Superior Court of Pennsylvania reversed the trial court's decision to admit evidence that a minor operator of a bicycle had consumed alcohol prior to the accident that occurred when the bicycle he was riding was struck by a car.  In that case, the only evidence regarding the minor bicyclist's intoxication was (1) a police officer's testimony that he smelled beer emanating from the ambulance in which the injured bicyclist was placed following the time of the accident; (2) a blood test indicating that the minor bicyclist's blood alcohol content was at 0.06% (below the statutory presumption of unfitness to operate a vehicle); and (3) the opinion of an expert, who extrapolated blood test results and concluded that because the bicyclist was a minor, he would have an exaggerated reaction to alcohol.  Id.  The trial court had allowed the admission of this evidence based on the minor's "lack of prudent judgment" in riding a bicycle in the dark on a major highway at 2:10 a.m. without reflectors.  Id. at 804, n.2.  Rejecting this justification, the Superior Court explained that "[w]hether [the minor] acted with prudent

---

[3] As the Third Circuit Court of Appeals has stated,

> The Pennsylvania decisions have not established a precise level of culpability to be applied as an immutable threshold.  To impose a rigid standard for foundation evidence would impair the trial judge's flexibility to perform his duty of determining whether, in the particular case before him, the evidence and offers of proof present a picture of unfitness to drive sufficiently clear that the probative value of the evidence of drinking or intoxication outweighs its potential for unfair prejudice.

Rovegno v. Geppert Bros., 677 F.2d 327, 331 (3d. Cir. 1982).

judgment, however, is a matter of contributory negligence – a question which the jury must decide. The factors cited by the trial court are unrelated to physical manifestations of the effects of alcohol, as opposed to those mentioned below such as slurred speech or erratic behavior."  Id.

Similarly, in Christ v. Aurigemma, 15 Phila. 549, 554 (P.C.C.P. 1987), the Philadelphia Court of Common Pleas excluded evidence of a lab report regarding a driver's alcohol intake prior to his car accident, where two passengers had testified that the driver was not visibly intoxicated and there was no other evidence of intoxication.  The court noted that such other evidence of intoxication might include evidence of "staggering, slurred speech, bloodshot eyes, strong odor of alcohol, unusual behavior, etc."  Id.  Although there was testimony indicating that the driver was speeding when the accident occurred, that same testimony stated that speeding was the driver's usual practice.  Id.

By contrast, Pennsylvania courts have admitted evidence of alcohol consumption in cases where the evidence is sufficient to support a finding of intoxication.  In Stramara v. Dorsey Trailers, Inc. Nos. 96-7361 and 96-7362, 1998 U.S. Dist. LEXIS 19420, at **13-18 (E.D. Pa. Dec. 8, 1998), the court admitted evidence of driver's blood alcohol level where one passenger testified that the driver and other passengers "were drunk before they picked [him] up;" and another passenger testified that "everyone was drinking beer"; beer cans were strewn about the driver's car at the time of the accident; and there was evidence that the driver did not decelerate or otherwise try to avoid the trailer that he later hit.  The court concluded that "[i]n light of the [driver's blood alcohol content], Defendant's expert testimony [regarding the driver's unfitness to drive his car at the time of the accident], and the strong testimonial evidence that [the driver] was unfit to drive his car on the evening of the accident due to intoxication, the Court finds that the evidence of his [blood

alcohol content] and drinking before the accident is admissible."

Here, in the case presently before the Court, Plaintiffs simply do not have sufficient "supplemental" evidence to support a finding that Mr. King was actually impaired at the time of the accident by his prior use of marijuana. The *only* evidence of Mr. King's marijuana use are the results of the toxicology screen and Mr. King's admission that he smoked marijuana on the Saturday evening prior to this Monday morning accident. Plaintiffs state that Mr. King's driving was "strange [sic] reckless, dangerous and unexplained" and "erratic" for several miles before the accident. Resp. of Plfs.' to Defs.' Mot. for Partial Summ. J. at ¶ 12; Mem. of Law in Supp. of the Resp. of Plfs. to Defs.' Mot. for Partial Summ. J. at 4-5. In support of these allegations, Plaintiffs present evidence that Mr. King failed to complete his pass of Ms. Walton's SUV, was speeding, and accelerated shortly prior to the accident. That may be so with or without marijuana use. However, Plaintiffs have not provided any caselaw to suggest that erratic driving as described here, without more, constitutes "other evidence" of impairment sufficient to introduce evidence of Mr. King's marijuana use at trial.

The record has no other evidence of Mr. King's alleged marijuana-induced "impairment." On the contrary, Officer Bender, Detective Sergeant Nice, Sergeant Mullin and Ms. Miller, all of whom spoke with Mr. King shortly after the accident, testified that they did not notice any signs that Mr. King was under the influence of a controlled substance. The evidence of Mr. King's conduct, seen in the light most favorable to Plaintiffs' case, may reflect poor or even reckless driving, but it does not reflect something that could be fairly understood to be marijuana-induced impairment.[4]

---

[4] Admittedly, most of the relevant caselaw involves evidence of alcohol use, rather than marijuana use. When deciding whether there is sufficient "other" evidence of alcohol intoxication, courts have considered some of the familiar signs of alcohol intoxication, such as slurred speech, an unusual demeanor, and bloodshot eyes. See Stramara v. Dorsey Trailers, Inc.

Dr. Barbieri's report does not provide the missing link between Mr. King's marijuana use and an alleged impairment. At the outset, the report is weak, speculative, and replete with qualifiers: Dr. Barbieri contends that "if" Mr. King showed signs of impairment, his earlier marijuana use "can be" responsible for that impairment, "especially in the absence of another more competent cause." Barbieri Rept., Plfs.' Ex. C, at 1. It can be said fairly that this is a report in which its author is hedging his bets. Additionally, the report does not analyze the amount of marijuana that a person of Mr. King's height and weight would have to use to be "impaired," nor does it suggest how quickly the effects of marijuana would wear off of a person such as Mr. King. In sum, Dr. Barbieri does not assist Plaintiffs in their attempt to offer "other evidence" of impairment. Accordingly, and considering this case as a whole, the Court will exclude all evidence of, and references to, Defendant King's prior use of marijuana and his alleged resulting impairment.[5]

Even without considering evidence of Mr. King's marijuana use, however, a jury could find

_____

Nos. 96-7361 and 96-7362, 1998 U.S. Dist. LEXIS 19420, at **13-18 (E.D. Pa. Dec. 8, 1998); Locke v. Claypool, 627 A.2d 801, 805-06 (Pa. Super. 1993); Christ v. Aurigemma, 15 Phila. 549, 554 (P.C.C.P. 1987). The Court recognizes that signs of marijuana impairment may be different from signs of intoxication, and therefore it may be more difficult to determine what constitutes "other" evidence of impairment by marijuana, given the dearth of specific guidance in the caselaw. Nevertheless, it is reasonable to expect *some* outward sign of impairment if an impairment exists. An alarmingly high number of people speed on the roadways, drive dangerously or carelessly, or accelerate at inappropriate times, similar to the manner in which Mr. King is alleged to have driven. Here, nothing suggests that Mr. King's alleged conduct was caused by his use of marijuana, and, accordingly, the Court is satisfied that the evidence presented here does not fairly reflect "other" evidence of impairment by marijuana so as to permit introduction of evidence that at a minimum would necessarily invite the jury to engage in considerable speculation.

[5] The Court also recognizes that even if the evidence of Mr. King's driving prior to the accident were considered "other evidence" of marijuana-induced impairment, the evidence of Mr. King's marijuana use could still be excluded under Federal Rule of Evidence 403 because its probative value is substantially outweighed by the danger of unfair prejudice.

that the testimony of Mr. Pennington and the report of Mr. Baranowski demonstrate that at the time of the accident, Mr. King was distracted by his cellular phone conversation and was operating his tractor-trailer in a wildly erratic manner so as to prevent Ms. Walton from passing him.  Such a finding might satisfy the "intentional or willful, wanton or reckless conduct" standard to support a finding for punitive damages.  <u>SHV</u>, 587 A.2d at 704.  At oral argument, Defendants confirmed that they did not have any caselaw to suggest that the punitive damages claim could *not* go forward in the absence of evidence of Mr. King's marijuana use.  Oral Argument Tr. at 28-29.  Moreover, Defendants agreed that the case *could* go forward, on an alleged negligence theory, in the absence of any reference to Mr. King's marijuana use.  Oral Argument Tr. at 29.  The Court therefore denies Defendant's Motion for Partial Summary Judgment as to Plaintiffs' claim for punitive damages.

IV.    CONCLUSION

For the reasons set forth above, the Court grants Defendants' Motion for Partial Summary Judgment as to Defendants' request to exclude all evidence of, and references to, Defendant King's use of marijuana and his alleged resulting impairment, but denies Defendants' Motion for Partial Summary Judgment as to Plaintiffs' claims for punitive damages.   An Order consistent with this Memorandum follows.

BY THE COURT:

S/Gene E.K. Pratter
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE

13

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **QUENTIN PENNINGTON, ET AL.,** | : | **CIVIL ACTION** |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **NOBLE R. KING, ET AL.,** | : | |
| **Defendants** | : | **NO. 07-4016** |

**<u>ORDER</u>**

AND NOW, this 19th day of February, 2009, upon consideration of Defendants' Partial

Motion for Summary Judgment (Docket No. 11), it is hereby ORDERED that Defendant's Partial

Motion for Summary Judgment is GRANTED IN PART AND DENIED IN PART.  The Partial

Motion for Summary Judgment is GRANTED as to Defendants' request to exclude all evidence

of, and references to, Defendant King's use of marijuana and his alleged resulting impairment, and

DENIED as to Defendants' motion for summary judgment on Plaintiffs' claim for punitive

damages.

BY THE COURT:

<u>S/Gene E.K. Pratter</u>
<u>        GENE E. K. PRATTER    </u>
UNITED STATES DISTRICT JUDGE